IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 614-302-4804 | Case No. 2:24-mj-151<br>**Filed Under Seal** |
| --- | --- |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent (SA) David Krauss with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **614-302-4804** with International Mobile Subscriber Identity (IMSI) number **310240142424323** (the "**Target Cellular Device**"), which is described in Attachment A.

2. I am a special agent with HSI and I have been employed with HSI since January 3, 2023. I am assigned to a narcotics group at the HSI Columbus, Ohio Office of the Assistant Special Agent in Charge, and I am cross-designated to investigate and conduct enforcement activities for violations of Title 21 of the United States Code. During my employment as a special agent, I completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special

Agent Training program. Prior to my role as a special agent and beginning August 3, 2018, I was employed as a police officer with the City of Springfield, Ohio Division of Police. On December 20, 2021, I was promoted to the rank of police sergeant.

3. I have participated in numerous narcotics investigations, during the course of which I have conducted physical surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training, education, and experience (including conducting surveillance on numerous occasions of individuals engaged in drug trafficking), I have become familiar with the way illegal drugs are imported and distributed, the method of payment for such drugs, the various ways drug money is laundered, and the efforts of persons involved in such activities to avoid detection by law enforcement.

4. By virtue of my training and experience, and through conversations with and review of reports from other experienced agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, collect, store, safeguard, remit, and/or launder drug proceeds; the methods used by drug traffickers to obtain and utilize multiple telephones, pagers, computers, and other devices in order to communicate with each other; and the jargon and/or codes commonly used when drug traffickers refer to drugs and/or drug proceeds.

5. Through training and participation in investigations, I have become familiar with the way drug traffickers conduct their illegal business and the methods, language, and terms that are used to disguise conversations about drug trafficking. From experience and training, I have learned, among other things, that drug traffickers rarely refer to cocaine, fentanyl, heroin, methamphetamine, or other illegal drugs by name; instead, to conceal the true nature

of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms. I have been involved with investigations for Title 21 offenses and I am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration and HSI.

6. Through training and experience, I am aware that persons involved in the illicit distribution of controlled substances tend to conceal their identities as well as the locations at which they reside and where drug transactions take place. Drug traffickers are also known to have vehicles, properties, businesses, utilities, mobile telephone services, and other assets in the names of other people to conceal association with their drug trafficking activity as it relates to financial transactions. I am aware through training and experience that, while drug traffickers may establish businesses or purchase assets in their own names, drug traffickers also establish businesses and place assets that they have acquired in the names of other individuals to conceal the true ownership, the true nature of the transactions, and the source of funds.

7. Through training and experience, I know that drug traffickers often generate, maintain, and conduct transactions with large amounts of United States currency, which represent the proceeds of drug trafficking. Drug traffickers will also launder the money used in the illegal drug transactions through businesses they own or operate and/or by acquiring assets.

8. Through training and experience, I know that cellular telephone calls, texts, and other electronic messaging enable drug trafficking organizations to maintain contact with the associates, drug suppliers, and customers. Electronic communication is often followed by immediate telephonic contact with the individual sending the electronic message. Drug

trafficking organizations frequently use cellular telephones and cellular electronic messaging features to communicate with associates relating to the logistics of their drug trafficking business as well as to further their money laundering activities. I am also aware that those involved in illegal drug operations often list their telephones and cellular telephones in the names of others or in fictitious names to conceal their identities and illegal purposes, and to thwart law enforcement detection and prosecution. I am also aware that drug traffickers often possess and utilize more than one communication device at one time to facilitate their drug trafficking activities. I know that it is common in drug trafficking operations for multiple telephone numbers associated with the operation to have contacts in common; it is also common for a source of supply and the end recipient of the drugs to have a common point of contact, such as a middleman, who effectively brokers the transaction between these two parties.

9. The information set forth in this affidavit is based upon my knowledge, training, experience, and participation in investigations involving the smuggling, possession, distribution, and storage of narcotics and narcotics proceeds. This information is also based on the knowledge, training, experience, and investigations conducted by fellow law enforcement officers, which have been reported to me either directly or indirectly. I believe this information to be true and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Your affiant did not withhold any information or evidence that would negate probable cause.

10. One purpose of applying for this warrant is to determine with precision the **Target Cellular Device**'s location. There is reason to believe the **Target Cellular Device** is

currently located within the Southern District of Ohio according to ping data and precision location information authorized by a warrant signed by Franklin County Court of Common Pleas Judge Hawkins on March 12, 2024. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Cellular Device** outside the district provided the device is within the district when the warrant is issued.

11. Based on the facts set forth in this affidavit, there is an existing and active State of Ohio arrest warrant for Issaic HILLIS. HILLIS has violated Ohio Revised Code 2925.11, possession of drugs, and 21 U.S.C. § 841, possession with intent to distribute a controlled substance. HILLIS is the subject of an arrest warrant issued on February 28, 2024, for failure to appear for the arraignment of an indictment for narcotics violations in the Franklin County Court of Common Pleas. There is probable cause to believe HILLIS is aware of these charges and has failed to appear for arraignment. There is also probable cause to believe that the **Target Cellular Device**'s location will assist law enforcement in arresting HILLIS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

12. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

13. I know it is a violation of 21 U.S.C. § 841 for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

**PROBABLE CAUSE**

14. Officers assigned to Columbus Division of Police, Community Response Team 5 (CRT5), received multiple community complaints regarding a suspected narcotics house located at 1956 South 9th Street, Columbus, Ohio 43207. Officers with CRT5 initiated a narcotics investigation into 1956 South 9th Street starting in early December 2023. Officers conducted surveillance over multiple days and observed multiple individuals arriving and leaving the area of 1956 South 9th Street, which was consistent with drug activity from the community complaints. Officers were unable to see individuals once they walked towards the rear of the location but believed the individuals to be going into 1956 South 9th Street.

15. Officers determined through surveillance the individual likely responsible for the source of narcotics to 1956 South 9th Street to be a taller, light skinned male black with dreads, who was later identified as HILLIS. HILLIS has been arrested on multiple occasions for possession of drugs and weapon offenses. Additionally, Officer Mason knows HILLIS to sell narcotics near 1956 South 9th Street from field interviews conducted by other Columbus Division of Police officers.

16. On December 27, 2023, the Columbus Division of Police responded to a dispatched run at 1956 South 9th Street. The incident was received at 4:20 PM and dispatched at approximately 4:21 PM. The dispatched run was called in by Joe Summers, who was later identified as the homeowner of 1956 South 9th Street. Summers stated multiple individuals were inside the vacant property, selling drugs from the location. Officers arrived shortly after being dispatched at approximately 4:27 PM.

17. Officer Truxall was approached by a male who was with Summers, attempting to secure the structure. The male walked towards the rear of 1956 South 9th Street and

attempted to contact individuals inside. Officer Truxall waited for backup to arrive prior to approaching the location. The male informed Officer Truxall that a male black with dreads opened the back door and pointed a firearm at him. Officer Truxall approached the front door and observed a male black with dreads fleeing from the back of 1956 South 9th Street. Responding officers were able to apprehend the male after a foot pursuit and identified him as HILLIS. Officers recovered money from HILLIS but did not locate a firearm. Officers also collected money that they observed HILLIS drop while running. In total, $4,282.00 was recovered and submitted to the Columbus Police Property Room under property number 23P022256.

18. Officers took multiple individuals into custody at 1956 South 9th Street including Kayla MURPHY. Responding officers cleared 1956 South 9th Street, securing the structure. While securing 1956 South 9th Street, officers observed a digital scale on the floor, square aluminum foil pieces on a table, white powder on a table, a safe, syringes, a mannitol bottle, and several other pieces of drug paraphernalia. I know from training and experience that the square aluminum foil pieces are commonly used for packaging drugs for sale. I also know that mannitol is a commonly used cutting agent for cocaine and fentanyl.

19. Officer Nicholas Mason obtained a search warrant from Franklin County Municipal Court Judge D'Varga at 6:57 PM to conduct a search of 1956 South 9th Street. Officers executed the search warrant at 7:00 PM and collected evidence from 1956 South 9th Street. Officers recovered multiple baggies of suspected narcotics, a blender with white residue, a bottle of mannitol, a cell phone, ammunition, and four firearms identified as a Ruger Security 9mm (serial number 383-78532), a Springfield XD9 (serial number MG715014), a Glock 17 (serial number X4D098), and a Taurus G2C (serial number

ABJ867212). The firearms were later test fired by Crime Gun Intelligence Center personnel (CGIC) and found to be operable. The collected evidence was submitted under property number 23P022261 to the Columbus Police Property Room. Laboratory examination requests were submitted for chemical analysis to identify the suspected narcotics recovered from the location.

20. MURPHY was found to have active warrants for her arrest and was searched by Lt. Husband #5326. Lt. Husband felt what she believed to be contraband in the crotch area of MURPHY. MURPHY stated to Lt. Husband that the item was a tampon. MURPHY requested a medic and stated that she swallowed fentanyl prior to police custody. Columbus Fire Medic 22 responded to scene and MURPHY was placed in the back of the medic. MURPHY was unrestrained and allowed to retrieve the object felt by Lt. Husband. MURPHY dropped multiple pieces of a white rock-like substance on the floor of the medic. The substance was collected and submitted to the Columbus Police Property Room for drug identification. The substance was later identified as 37.199 grams of cocaine. MURPHY was slated at the Franklin County Jail for violating Ohio Revised Code 2925.11, possession of drugs – cocaine, a felony of the first degree.

21. Officer Mason later received Columbus Police Crime Laboratory results identifying the collected narcotics from within 1956 South 9th Street as cocaine with a weight of 0.229 grams and fentanyl with a combined weight of 4.369 grams. The white residue in the blender was determined to be fentanyl.

22. Officer Mason later obtained a search warrant on January 2, 2024, to search the cell phone recovered from inside 1956 South 9th Street, signed by Franklin County

Municipal Court Judge Hummer. The cell phone was processed and returned to the Columbus Police Property Room.

23. Officer Mason conducted a review of information recovered from the cell phone. Officer Mason located the name "IZZO" under contacts with a telephone number of **614-302-4804** (the same number as the **Target Cellular Device**). Officer Mason knows HILLIS to use the street name "IZZO." Officer Mason reviewed text messages located inside the cell phone and found text messages to telephone number **614-302-4804**. The first text messages from the cellular device to **614-302-4804** occurred on December 10, 2023. In the message, an unknown individual texted **614-302-4804** stating "Hey buddy…give Eddie a call if you would…he wants a half of hardware…" Officer Mason knows this to be common drug language on someone seeking a half gram of crack-cocaine.

24. On December 13, 2023, the unknown individual again texted **614-302-4804** at 3:06 PM. The message started with the unknown individual stating "Hey buddy…you around??" At 3:53 PM, telephone number **614-302-4804** responded "No Hard," and "Ya." At 3:56 PM, the unknown individual responds back "Ok. I'm cool...thanks." I know from training and experience that crack-cocaine is referred to as "hard." I believe the unknown individual was attempting to purchase cocaine from HILLIS.

25. On January 26, 2024, HILLIS was indicted in the Franklin County Court of Common Pleas for two counts of possession of drugs (see Franklin County Court of Common Pleas case number 24CR000417). One count was a felony of the second degree, the other was a felony of the fourth degree. Both counts had firearm specifications. On February 28, 2024, a warrant was issued from the Franklin County Court of Common Pleas for HILLIS' arrest after HILLIS failed to appear for arraignment.

26. On March 9, 2024, Officer Mason reviewed jail calls from the Franklin County Jail. Officer Mason conducted a search for telephone number **614-302-4804** through the jail call system. Officer Mason determined 567 calls were made from December 27, 2023 to March 9, 2024 to the telephone number **614-302-4804** from the Franklin County Jail. A total of 4 calls were answered by telephone number **614-302-4804**. The pin number used to make the phone calls from the Franklin County Jail belonged to MURPHY. As described in further detail below, law enforcement discovered MURPHY was calling HILLIS. It was determined through the jail calls that MURPHY and HILLIS are involved in a relationship. HILLIS and MURPHY talked about ongoing court cases throughout the jail calls.

27. On January 30, 2024, MURPHY contacted telephone number **614-302-4804** at 11:57 AM. On the call, MURPHY is heard talking to a male, believed to be HILLIS. MURPHY is heard asking HILLIS about what happened in court. A review of Franklin County Municipal Court Clerk of Courts website showed HILLIS had a pre-trial hearing on January 30, 2024, from the arrest on December 27, 2023 (see Franklin County Municipal Court case number 2023CRB021043). The arrest occurred after HILLIS fled from officers from the rear of 1956 South 9th Street. A female is heard in the background of the phone asking MURPHY (referring to her as Kayla) if she was okay. MURPHY acknowledged the female and stated at least she is "clean." MURPHY talked about detectives attempting to interview her at the hospital. MURPHY and HILLIS also talked about filing for discovery to determine what information is associated with the investigation. MURPHY is heard referring to the male as "IZZO." Due to the conversation, it was further confirmed HILLIS was in possession of a mobile cellular device attached to telephone number **614-302-4804** (**Target Cellular Device**).

28.   On February 2, 2024, MURPHY contacted telephone number **614-302-4804** at 4:17 PM. MURPHY asked HILLIS if he was in the spot when he was acting like he could not hear her. It is believed MURPHY was referring to the phone conversation on January 30, 2024, when HILLIS ended the conversation as if he could not hear MURPHY. MURPHY stated to HILLIS that she would call him back.

29.   At 10:03 PM, MURPHY contacted HILLIS at **614-302-4804**. MURPHY asked HILLIS if he was at the house and HILLIS stated that he was still driving around. HILLIS told MURPHY he believed his next court date was on the 24th. A review of Franklin County Municipal Court Clerk of Courts website showed HILLIS' court date was set for February 26, 2024. HILLIS stated at the end of the conversation, "bout to drop this shit off real quick." I believe from training and experience that HILLIS was referring to delivering illegal narcotics to an unknown location.

30.   On February 26, 2024, MURPHY contacted HILLIS at **614-302-4804** at 3:00 PM. HILLIS had a court date in Franklin County Municipal Court for obstructing official business from the December 27, 2023, incident at 1956 South 9th Street. HILLIS told MURPHY that his court case was dismissed. HILLIS then advised MURPHY that he was indicted out of an old case. HILLIS was referring to the indictment in Franklin County Court of Common Pleas case number 24CR000417. HILLIS stated that he had a little bit on him, around half a gram.

31.   On March 12, 2024, Officer Mason applied for a search warrant to ping the **Target Cellular Device**. The same day, Franklin County Court of Common Pleas Judge Hawkins signed an order, directing T-Mobile to provide all available ping data and precision location information for the **Target Cellular Device** to the Columbus Division of Police for a period of 30 days.

32. On March 17, 2024, Officer Mason observed one of the pings received from the **Target Cellular Device** was within the City of Columbus and near the area of South High School, 1160 Ann Street, Columbus, OH 43206, with a certainty radius of approximately 800 meters.

33. On March 18, 2024, Officer Mason observed one of the pings received from the **Target Cellular Device** at 7:47 PM was within the City of Columbus and near the area of Fornof Road, just east of South High Street. The certainty radius of that ping was 3,339 meters.

## MANNER OF EXECUTION

34. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

35. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Cellular Device** or receiving signals from nearby cellular devices, including the **Target Cellular Device**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Cellular Device** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Cellular Device** and use that

information to determine the **Target Cellular Device**'s location, even if it is located inside a house, apartment, or other building.

36. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Cellular Device**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Cellular Device**, and law enforcement will limit collection of information from devices other than the **Target Cellular Device**. To the extent that any information from a cellular device other than the **Target Cellular Device** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Cellular Device** from all other cellular devices.

## AUTHORIZATION REQUEST

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

38. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified

because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

39. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

40. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

David Krauss
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
On: March 20, 2024



Elizabeth A. Preston Deavers
United States Magistrate Judge